IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARTIN FOSS and SUSAN FOSS, : No. 3:17cv1757
    Plaintiffs :
                           : (Judge Munley)
    v. :
                           :
PHOENIX INSURANCE COMPANY, :
    Defendant :
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before the court for disposition is Defendant Phoenix Insurance Company's (hereinafter "defendant") motion to dismiss Count II of Plaintiffs' Martin and Susan Foss (hereinafter "plaintiffs") complaint. The motion has been fully briefed and the matter is ripe for disposition.

**Background**

Plaintiffs insured their home with defendant. (Doc. 1-1, compl. ¶ 3). The homeowners' policy included basic coverage as well as a value added policy, the latter providing additional coverage. (Id. ¶ 7). Losses covered by the value added policy included coverage up to $58,000.00 for "ordinance law" coverage. (Id. ¶ 8). A damaged sewer pipe resulted in a loss at plaintiff's property on January 13, 2017. (Id. ¶ 9, 14).[1]

---

[1] The record does not reveal the event or events that caused the loss.

In the ensuing excavation the fresh water supply pipe leading to plaintiffs' home was found to be actually running through the sewer pipe, in violation of building and construction codes. (Id. ¶ 14). In addition to separating the sewer and water pipes, the homeowners' insurance claim necessitated: removing concrete stairs in front of the home (Id. ¶ 16); damage repair inside the home, (Id. ¶ 21); and electrical work inside the home, (Id. ¶ 19). This extra work is required in order to comply with ordinances and laws.[2]

Defendant has denied all coverage necessitated by the ordinance and law upgrade expenses. (Id. ¶ 20). The sewer pipe remains exposed as a result. (Id. ¶ 23). The complaint alleges defendants payments are well below the loss, defendants failed to honor the policy terms, along with wrongfully denying claims under the value added policy mentioned above, resulting in desperate need for repairs and a home in "complete disarray." (Id. ¶ 25-28).

In response, plaintiffs filed their complaint on August 29, 2017 in the Court of Common Pleas for Schuylkill County, Pennsylvania alleging the following: Count I alleges breach of contract; and Count II alleges Breach of Duty of Good Faith and Fair Dealing under 42 Pa.C.S.A. § 8371. Defendant timely filed a notice of removal to this court on September 28, 2017, followed by the instant

---

[2] Plaintiff Susan Foss alleges she has become ill as a result of unsanitary conditions inside the home.

motion to dismiss on October 3, 2017, relative to Count II only, thus bringing the case to its current posture.

**Jurisdiction**

Plaintiffs are citizens of Pottsville, Pennsylvania. (Doc. 1, notice of removal). Defendant is a citizen of Connecticut. (Id. ¶ 8). Plaintiffs seek in excess of $75,000 in damages. (Id. ¶ 9).

Thus, because the parties are citizens of different states this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. See 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States"). The substantive law of Pennsylvania shall apply to the instant case because the court is sitting in diversity. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d. Cir. 2000), citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938).

**Standard of review**

Defendant filed its motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable

3

reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)).  The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of "[each] necessary element" of the claims alleged in the complaint.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation."  Phillips, 515 F.3d at 234-35.  In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted).  The court does not have to accept legal conclusions or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," a standard which "does not require detailed factual allegations," but a plaintiff must make "a showing, rather than a blanket assertion, of entitlement to relief that rises above

4

the speculative level." McTernan v. N.Y.C., 564 F.3d 636, 646 (3d Cir. 2009) (citations and internal quotations and quotation marks omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted). "Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (quoting Twombly, 550 U.S. at 555).

**Discussion**

Defendant moves to dismiss Count II of the plaintiffs' complaint, which alleges a bad faith claim. Pennsylvania's bad faith statute provides as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.

5

> (3) Assess court costs and attorney fees against the
> insurer.

42 Pa. Cons. Stat. Ann. § 8371.

The statute does not define "bad faith." Pennsylvania courts, however, have adopted the following definition of "bad faith" on the part of an insurer:

> [A]ny frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

Perkins v. State Farm Ins. Co., 589 F. Supp. 2d 559, 562 (M.D. Pa. 2008) (citing Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa.Super. Ct. 1994) (quoting Black's Law Dictionary (6th ed.1990)) (citations omitted); see also Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005) (predicting the Pennsylvania Supreme Court would define "bad faith" according to the definition set forth in Terletsky)).

The United States Court of Appeals for the Third Circuit has adopted the legal standard established by the Pennsylvania Superior Court for testing the sufficiency of bad faith claims under section 8371. The courts apply a two-part test "both elements of which must be supported with clear and convincing evidence: (1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) (citing Terletsky, 649 A.2d at 688).

Defendant's motion to dismiss launches two attacks on Count II of plaintiff's complaint. The first argues that any allegations against defendant for breach of the duty of good faith and fair dealing constitute common law bad faith sounding in tort, which should be dismissed for failure to state a claim for which relief can be granted because Pennsylvania does not recognize a common law bad faith claim sounding in tort. Next, defendant argues dismissal is appropriate because the complaint merely makes "conclusory" allegations that provide insufficient factual averments to support a bad faith claim.

Here, defendant's first argument fails because it is clear on the face of the complaint that plaintiff has not alleged a common law bad faith claim sounding in tort, but rather, a claim under Pennsylvania's bad faith statute discussed above. Moreover, Count II is clearly captioned in the complaint as follows:

**COUNT II**
**BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**
**IN VIOLATION OF 42 Pa.C.S.A. § 8371**

(Doc. 1-1 at 6).

Next, defendant argues that plaintiffs fail to sufficiently allege a bad faith claim because they merely state boiler-plate legal conclusions. According to defendant, plaintiffs allege no facts to back up the conclusory legal statements.

7

After a careful review of the complaint, (Doc. 1-1), and the insurance policy,[3] (Doc. 6-2 at 12-53), we disagree.

Our review pursuant to Klinger considers the well-pleaded allegations of the complaint as true and in the light most favorable to the non-movant. The insurance policy provides $294,000.00 of dwelling coverage for the plaintiffs' home. (Doc. 1-1 ¶ 7). In addition, the plaintiffs opted for a value added policy providing for twenty (20) percent of dwelling coverage for "the increase costs [plaintiffs] incur due to the enforcement of any ordinance or law" instead of the ten (10) percent ordinance or law coverage set forth in the main policy, (Doc. 6-2 at 22, 38-40), thus making $58,000 available for ordinance and law coverage.

Defendant does not argue that plaintiffs' dwelling loss is not covered. Instead, the underlying issue in this case is defendant's refusal to pay for code upgrades under the ordinance or law policy. According to plaintiffs, defendants posit that the combined fresh water supply/sewer pipe is not covered under the policy because the fresh water supply pipe was not damaged first by a covered cause of loss. (Doc. 1-1 ¶ 20).

Our reading of the insurance policy (Doc. 6-2 at 12-63) reveals two dispositive facts. First, the policy does not contemplate a fresh water supply pipe located within a sewer pipe, for the same is not mentioned anywhere in the

---

[3] Entitled: "Homeowner's Policy Booklet from Travelers"

8

policy. Second, the policy therefore does not exclude coverage where a fresh water pipe was not damaged first, before the sewer pipe with which it is combined, by the covered cause of the loss. Thus, under the first prong set forth in Klinger, and construing everything in the light most favorable to the non-moving party, we find that defendant lacked a reasonable basis for denying benefits covering the various and sundry upgrades required by ordinance and law in order to effectively cover the main dwelling policy claims.

  The second prong in Klinger requires the court to determine whether the insurer knew or recklessly disregarded its lack of reasonable basis. Under Pennsylvania law we construe any ambiguities in the policy "in favor of the insured to further the contract's prime purpose . . . and against the insurer, as the insurer drafts the policy, and controls coverage." Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 674 (3d Cir. 2016), citing Kvaerner Metal Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006) (citation omitted). In the case at bar, when viewed in the light most favorable to the non-moving party, we do not confront an ambiguity in the policy. Rather, defendant's basis for refusing coverage is simply not present in the policy. It is axiomatic that insurance policy language – or the lack thereof -- is imputed to the insurer, because the insurer is the scrivener of the policy. We conclude, therefore, that defendant knew or recklessly disregarded its lack of reasonable basis for denying

9

coverage regarding the entire combined water supply pipe/sewer pipe loss including the ordinance and law coverage pursuant to the value added policy.

**Conclusion**

After a careful review, defendant's motion to dismiss Count II of the plaintiffs' complaint will be **DENIED**. An appropriate order follows.

**Date: November 30, 2017**              s/James M. Munley
                                          **JUDGE JAMES M. MUNLEY**
                                          **United States District Court**